# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MAURICE GUNN, JR., as personal representative
for the Estate of Maurice La'Ron Gunn, deceased,

    Plaintiff,

v.

GENERAL STAR INDEMNITY COMPANY,
and GENERAL STAR NATIONAL
INSURANCE COMPANY,

    Defendants,

and

GENERAL STAR INDEMNITY COMPANY,

    Counter-Plaintiff and Third-Party Plaintiff,

v.

MAURICE GUNN, JR., as personal representative
for the Estate of Maurice La'Ron Gunn, deceased,

    Counter-Defendant,

and

15500 E WARREN LLC, SARAH INVESTMENT,
INC., and YASI INVESTMENT, LLC,

    Third-Party Defendants.

_____/

Case No. 21-11777
HON. DENISE PAGE HOOD

1

# ORDER GRANTING DEFENDANT GENERAL STAR INDEMNITY COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(c) [ECF No. 18] AND CLOSING THE CASE

## I.     INTRODUCTION

Defendant General Star Indemnity Company ("General Star") filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c). [ECF No. 18] Plaintiff filed a response, and General Star submitted a reply.   General Star asks that the Court grant judgment in its favor on Plaintiff's First Amended Complaint, General Star's Counterclaim, and General Star's Third-Party Complaint.  For the reasons that follow, the Court grants the Motion for Judgment on the Pleadings, dismisses Plaintiff's First Amended Complaint,[1] enters declaratory judgment in favor of General Star with respect to its Counterclaim and Third-Party Complaint, and closes this case.

## II.    BACKGROUND

### A. The Gunn Lawsuit

On or about January 8, 2019, Maurice Gunn ("Mr. Gunn") initiated a lawsuit against 15500, Sarah Investment, and others in the Circuit Court of Wayne County,

---

[1] On October 4, 2021, Plaintiff filed an unopposed "Motion to Dismiss." [ECF No. 11]   The Motion to Dismiss memorialized Plaintiff's desire to voluntarily dismiss Defendant General Star National Insurance Company.   For the reasons stated in Plaintiff's Motion to Dismiss, as well as the concurrence of Defendants General Star Indemnity Company and General Star National Insurance Company, the Court GRANTS Plaintiff's Motion to Dismiss General Star National Insurance Company [ECF No. 11] from this action, with prejudice.

Michigan (*Maurice Gunn v. Patrick Thomas, Michael DeShawn Williams, 15500 E. Warren, LLC, Yasi Investment LLC, Sarah Investment, Inc. and various John Does*, Case No. 19-000337 (the "Gunn Lawsuit")). The Gunn Lawsuit sought damages resulting from injuries Mr. Gunn allegedly sustained on March 26, 2018, when he was verbally assaulted, struck, and beaten at a gas station and convenience store named "K&G Deli #2" (the "Incident"). K&G Deli #2, allegedly owned and operated by 15500 E Warren LLC ("15500"), Sarah Investment, Inc. ("Sarah Investment"), and Yasi Investment, LLC ("Yasi Investment") (collectively, "the Insureds"), was located at 15500 E. Warren, Detroit, Michigan.

Count I of the Gunn Lawsuit, entitled "Assault & Battery," alleged that several employees of K&G Deli #2 witnessed the attack on Mr. Gunn but failed to intervene, render aid or call for emergency assistance. Count II of the Gunn Lawsuit, entitled "Negligence/Gross Negligence," alleged that the Insureds owed duties to Mr. Gunn and the general public to provide a safe business environment and act in a safe and prudent manner. In response to the Motion for Judgment on the Pleadings, Plaintiff cites the following allegations from the complaint in the Gunn Lawsuit, all of which the Court accepts as true for purposes of this Order (and which General Star also appears to have accepted as true for purposes of the Motion for Judgment on the Pleadings):

3

- [The Insureds] owed certain duties to the general public, and [Mr. Gunn] in particular, to provide a safe business environment and to act in a prudent and safe manner.

- Defendant John Does witnessed the assault and battery of [Mr. Gunn] but utterly failed to render aid or call for emergency assistance, either police or medical services.

- [The Insureds] had notice that the store was dangerous, and that injury was likely to result to patrons due to criminal and/or negligent acts of third parties and K&G's employees.

- [The Insureds] are liable for the conduct, acts, and/or omissions of its employees by virtue of respondeat superior. [The Insureds] are also liable due to its direct negligence as alleged below.

- The conduct of [the Insureds], and John Does, in the course and scope of their employment by K&G, was a substantial factor in causing, failing to prevent, and/or failing to mitigate [Mr. Gunn]'s physical injuries, disability, and mental and emotional injuries, as well as the resulting damages as alleged herein, all of which are ongoing.

- [The Insureds] were negligent in conducting background checks, hiring, retaining, supervising, training, and monitoring Defendant John Does.

- Defendant John Does were negligent in failing to act in a reasonable, prudent, and safe manner, and failing to maintain a safe business environment as required by the virtue of their employment.

- [The Insureds] and John Does breached the above duties and acted in a negligent, gross negligent, careless, reckless, wanton, and/or willful manner by, including but not limited to:

    o Failing to prove a safe business environment to patrons;
    o Failing to properly train, supervise, and/or retain staff;
    o Failing to timely render aid to [Mr. Gunn] once he was injured;

4

- Using excessive and/or inappropriate force;
- Failing/refusing to call the police and/or medical personnel;
- Acquiescing in and encouraging a brutal assault and battery of [Mr. Gunn]; and
- All other acts of negligence learned through the course of discovery.
- That by refusing to reasonably expedite the enforcement of law enforcement, and even worse, casually watching and encouraging the brutal assault, [the Insureds], by and through their agents, provided the assaulters a safe haven in which to commit said brutal assault, with no fear that police were on the way, and thus, no reason to stop beating [Mr. Gunn] mercilessly.
- As a direct and proximate result of Defendants' negligent, gross negligent, careless, reckless, wanton, and/or willful conduct, [Mr. Gunn] suffered severe damages and will continue to suffer damages into the future.

Plaintiff ultimately alleges that, under both Counts in the Gunn Lawsuit, the Insureds were liable for the conduct, acts, and/or omissions of their employees/agents at K&G Deli #2 by virtue of respondeat superior, as well as their own direct acts of negligence. On March 10, 2020, a Consent Judgment and Voluntary Dismissal was entered in the Gunn Lawsuit, entering judgment against 15500 and Sarah Investment in favor of Mr. Gunn in the amount of One Million Dollars ($1,000,000.00) (the "Consent Judgment").

**B. The Policies and Exclusions**

General Star issued policy number IMA343565 to 15500 with effective dates of February 16, 2018 to February 16, 2019 to 15500 (the "15500 Policy"), under

5

which 15500 is an insured. General Star issued policy number IMA343524 to Sarah Investment with effective dates of October 6, 2017 through October 6, 2018 (the "Sarah Investment Policy"), under which Sarah Investment is an insured, and 15500 and Yasi Investment are deemed additional insureds, pursuant to endorsements. The 15500 Policy and the Sarah Investment Policy are referred to as "the Policies"). The Policies both include Endorsement Form CLF 21 0001 06 11 (EXCLUSION - ASSAULT OR BATTERY AND EXPECTED OR INTENDED ACTS) (the "Assault or Battery Exclusion" or the "Exclusion"). The Assault or Battery Exclusion to the Policies provides, in pertinent part, as follows:

> EXCLUSION - ASSAULT OR BATTERY AND EXPECTED OR INTENDED ACTS
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
>
> A.  This policy does not apply to damages for which the insured is legally liable, or costs or expenses, arising out of, resulting from, caused or contributed to by:
>
>   1.  Any act of assault or battery; or
>
>   2.  Any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, the insured's employees, patrons or any other person, including but not limited to claims of:

6

      a.      The negligent:

            (1)    Employment;
            (2)    Investigation;
            (3)    Supervision; or
            (4)    Retention

            of a person who assaulted or battered, or threatened to assault or batter, any other person; or

      b.      The negligent reporting of or failure to report:

            (1)    Any assault or battery;
            (2)    Any suspected or threatened assault or battery;
            (3)    Any person who assaulted or battered, or threatened to assault or batter, any other person; or
            (4)    Any person who was assaulted or battered; or

      c.      The breach of any legal obligation or any duty:

            (1)    To provide adequate security;
            (2)    Arising out of any assault or battery;
            (3)    That resulted in an assault or battery;
            (4)    Arising out of any suspected or threatened assault or battery; or
            (5)    To any person who was assaulted or battered.

[ECF No. 18, Ex. D at PageID.395]

On January 25, 2019, 15500 tendered the Gunn Lawsuit to General Star seeking coverage under the 15500 Policy. On January 29, 2019, General Star advised 15500 that coverage was unavailable under the 15500 Policy for the Gunn

Lawsuit pursuant to the Assault or Battery Exclusion of the 15500 Policy. On August 19, 2019, Sarah Investment tendered the Gunn Lawsuit to General Star seeking coverage under the Sarah Investment Policy. On September 6, 2019, General Star advised Sarah Investment that coverage was unavailable under the Sarah Investment Policy for the Gunn Lawsuit pursuant to the Assault or Battery Exclusion of the Sarah Investment Policy.

### C. Plaintiff's First Amended Complaint; General Star's Claims

In the First Amended Complaint, Plaintiff alleges two counts against General Star: (1) Breach of Contract; and (2) Request for Declaratory Judgment. [ECF No. 1, Ex. A (First Amended Complaint)] On August 9, 2021, General Star filed a Counterclaim against Plaintiff and Third-party Complaint against the Insureds seeking a declaration of rights and obligations between the parties under the Policies. [ECF No. 14] The Insureds appeared through counsel [ECF Nos. 15-17], and they agreed and stipulated to be bound by any judgment, order, or other ruling in this action determining and decreeing the rights, responsibilities, and obligations of the parties with respect to the issues addressed in the First Amended Complaint, General Star's Counterclaim, and General Star's Third-Party Complaint. [ECF No. 19]

### III. APPLICABLE STANDARD

In deciding a motion brought pursuant to Rule 12(c), the standard is the same

8

as that used in evaluating a motion brought under Fed.Civ.P. 12(b)(6). *See, e.g., Stein v U.S. Bancorp, et. al*, 2011 U.S. Dist. LEXIS 18357, at *9 (E.D. Mich. February 24, 2011). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. The Court must accept all well-pleaded factual allegations as true and review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

IV.   **ANALYSIS**

General Star asserts that it is entitled to judgment on the pleadings because the Assault or Battery Exclusion to the Policies precludes any and all coverage for

the damages sustained by Mr. Gunn that formed the basis of the consent judgment. Plaintiff counters that the Assault or Battery Exclusion is overly broad, vague, ambiguous, and purports to restrict coverage so as to interfere with other contracted-for liability coverage. Plaintiff contends that General Star's motion is based solely on a factual issue that has yet to be resolved, prior to Plaintiff having an opportunity to conduct discovery. For the reasons that follow, the Court agrees with General Star.

It is well-established law in Michigan that a policy of insurance is to be construed against the drafter in case of ambiguity or contradictions because the insurance contract is not made between parties of equal bargaining strength. *See, e.g., Raska v. Farm Bureau Mut. Ins. Co. of Michigan*, 412 Mich. 355, 362 (1982); *see also State Farm Mut. Auto. Ins. Co. v. Enterprise Leasing Co.*, 452 Mich. 25, 38-40 (1996). The rule of reasonable expectations derives from the application of the general principle that any exception to the liability of the insurer must be so stated as clearly to apprise the insured of its effect. *Id*. When a standardized insurance contract is put before a consumer to take it or leave it, the doctrine of the adhesion contract has been applied, in view of the disparate bargaining status of the parties, to ascertain the meaning of the contract which the insured would reasonably expect. *Id*.

"[E]xclusionary clauses in insurance policies are strictly construed in favor of the insured[.]" *Heniser v. Frankenmuth Mut. Ins. Co.*, 449 Mich. 155, 161 (1995) (citing *Brown v. Farm Bureau Gen. Ins. Co.*, 273 Mich. App. 658, 661 (2007)). This strict construction may only be overcome by "clear and specific exclusions." *Id*. "The insurance company bears the burden of establishing that an exclusion applies." *Id*.

Plaintiff argues that he has alleged that Mr. Gunn's injuries were due to a failure to timely render aid, call for an ambulance or EMT, or even request the aid of law enforcement. Plaintiff suggests that the Policy exclusions are vague and ambiguous as to whether they apply to the failure of the Insureds to seek medical attention or – Plaintiff posits – only police intervention. Plaintiff also challenges the clarity of the Policy's proposed exclusion of coverage for "the breach of any legal obligation or any duty . . . to any person who was assaulted or battered." Plaintiff claims that the provision fails to indicate scope, timeframe, or any other necessary condition that would prevent it from conflicting with other provisions of the Policy. Plaintiff believes this provision can be read to exclude coverage for non-assault and battery related injuries simply because the person injured had also been assaulted or battered. Plaintiff also argues that the Policy does not explicitly address the failure to timely render aid (although Plaintiff concedes such conduct

11

would be included if it is covered by the "breach of any legal obligation or any duty to any person who was assaulted or battered.").

The Court finds Plaintiff's arguments unpersuasive, especially as none of them are supported by any authority addressing exclusionary language in insurance contracts. Although a contract is ambiguous if it is capable of two or more possible reasonable meanings, *see, e.g., Lars Assocs., LLC v. Pamida Stores Operating Co., LLC*, 2013 Mich. App. LEXIS 161 (Jan. 29, 2013) (citing *Farm Bureau Mut. Ins. Co. v. Nikkel*, 460 Mich. 558, 563 (1999)), that is not pertinent in this matter. The Assault or Battery Exclusion language is not vague, overbroad or ambiguous, and it can be interpreted as a matter of law, without the need to conduct discovery. *See Nikkel*, 460 Mich. at 563 (citations omitted) (whether contract language is ambiguous is a question of law, not a question of fact); *Wilkie v. AutoOwners Ins. Co.*, 469 Mich. 41, 47 (2003) (citations omitted) (interpretation of a contract is a question of law requiring the examination of the language in the contract, giving it its ordinary and plain meaning as would be apparent to a reader of the instrument).

In fact, numerous Michigan courts have upheld as unambiguous, valid, and enforceable exclusions to coverage for injuries and damages associated with an assault or battery, such that the insurer is entitled to deny coverage under an

12

insurance policy. *See, e.g., See, Century Surety Co. v. Charron*, 230 Mich. App. 79, 86 (1998) (where entire suit against the insured was essentially premised on the insured's failure to prevent the sexual assault and/or to protect the victim assault or battery exclusion in its policy was unambiguous and clearly provided that the policy did not apply to an assault or battery or any alleged failure to prevent such action by the insured); *Essex Ins. Co. v. Spaghetti Bender,* Case No. 95-CV-76083-DT, 1996 U.S. Dist. LEXIS 10996, at *1 (E.D. Mich. June 24, 1996) (insurer had no duty to defend under assault and battery and negligent hiring/supervision exclusions where employee bouncers of an insured's lounge assaulted and battered a lounge patron); *Essex Ins. Co. v. Michigan Skatelands, Inc.*, Case No. 93-CV-70452-DT, 1993 U.S. Dist. LEXIS 15071 (E.D. Mich. July 23, 1993) (in relation to a shooting at a skating rink, claims for failure to provide safe and secure premises were precluded by operation of an Assault and Battery/Hiring Supervision Exclusion); *and Ill. Employers Ins. v. Dragovich*, 139 Mich. App. 502 (1984) (claim by third party against insured for injuries which third party sustained when he allegedly was struck, pushed or physically assaulted by employees or agents of insured was for the result of an assault; therefore insurer owed insured no duty to defend where language of assault and battery exclusion contained in liability policy was clear and

13

unambiguous in providing that coverage did not extend to bodily injury or property damage arising out of assault or battery).

The Court finds that the language of the Assault or Battery Exclusion is clear. The Exclusion states that the Policy does "not apply to damages . . . arising out of, resulting from, caused or contributed to by . . . [a]ny act of assault or battery . . . or . . . [t]he negligent reporting of or failure to report: (1) Any assault or battery; . . . (3) Any person who assaulted or battered, or threatened to assault or batter, any other person; or (4) Any person who was assaulted or battered; or . . . [t]he breach of any legal obligation or any duty: . . . To any person who was assaulted or battered." Michigan courts have ruled that "arising out of" means "originating from," or "growing out of," or "flowing from." *See, e.g., Michigan Mutual Liability Co. v. Ohio Casualty Ins. Co.*, 123 Mich. App. 688, 695 (1983).

Mr. Gunn's injuries and damages originated and flowed from the assault and battery committed against him during the Incident, whether it was the assault and battery itself or the failure of persons to react appropriately to the assault and battery. As noted above, by its terms, the Exclusion expressly states that the Policy does not apply to damages arising out of (originating or flowing from), resulting from, caused or contributed by any act of assault or battery. On that basis alone, the Court holds that the Exclusion precludes the coverage Plaintiff seeks due to the Insureds' (and

14

their agents, employees, etc.) actions or failure to act that arose or resulted from the assault and battery. Specifically, the Court holds that the Exclusion precludes coverage for the failure of the Insureds' employees and agents to timely render aid, call for an ambulance or EMT, or even request the aid of law enforcement.

The Exclusion further explicitly provides that the Policy does not apply to the failure to report an assault or battery—or the perpetrator or victim of an assault or battery. The Court is not persuaded by Plaintiff's contention that this provision is vague or ambiguous with respect to whether it means failure to call for an ambulance, EMT, or even request the aid of law enforcement. The fact that the Exclusion is broad—and does not delineate or specify to whom the failure to report applies—only serves to support the conclusion that there is no coverage for <u>any</u> failure to report. The broad nature of the Exclusion language actually undermines Plaintiff's contention that Plaintiff is entitled to coverage under the Policy. And, in fact, Plaintiff's position would be buttressed if the Exclusion did specify to whom a failure to report was excluded and the failure to call for an ambulance or EMT was not listed, but that is not the case here.

Finally, the Exclusion expressly states that the Policy does not apply to any breaches of any legal obligation or duty to the victim of an assault or battery, one of Plaintiff's key contentions of why the Policy covers the Insureds for the Incident.

15

Accordingly, despite Plaintiff's desire, the actions or inactions of the Insureds' employees and agents – including any failure to timely render aid, call for an ambulance or EMT, or even request the aid of law enforcement – as result of the Incident pursuant to which Mr. Gunn was the victim of an assault and battery are not covered under the Policy.

For the reasons stated above, the absence of liability due to the terms of the Exclusion extends to the damages and injuries suffered by Mr. Gunn as a result of or arising from the assault and battery against him. The Court therefore concludes that the Exclusion precludes coverage under the Policies and General Star has no liability under the Policies with respect to the Incident. Accordingly, the Court holds that General Star is entitled to summary judgment on Plaintiff's claims against General Star for breach of contract and declaratory judgment as a result of not paying out any award under Policy with respect to the Incident. For the same reasons, the Court concludes that General Star is entitled to declaratory judgment on its counterclaim against Plaintiff and its third-party claims against the Insureds.

## V. CONCLUSION

Accordingly,

IT IS ORDERED that Plaintiff's Motion to Dismiss General Star National Insurance Company [ECF No. 11] is GRANTED.

IT IS FURTHER ORDERED that Defendant General Star Indemnity Company's Motion to Dismiss [ECF No. 18] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's First Amended Complaint is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that declaratory judgment is entered in favor of Defendant General Star Indemnity Company with respect to its Counterclaim against Plaintiff, such that Defendant General Star Indemnity Company is not liable to, and has no legal obligation to, Plaintiff with respect to any injuries or damages sustained by Mr. Gunn as a result of the Incident.

IT IS FURTHER ORDERED that declaratory judgment is entered in favor of Defendant General Star Indemnity Company with respect to its Third-Party Complaint against the Insureds, such that Defendant General Star Indemnity Company is not liable to, and has no legal obligation to, the Insureds with respect to any injuries or damages sustained by Mr. Gunn as a result of the Incident.

IT IS FURTHER ORDERED that this cause of action is CLOSED. Judgment shall be entered separately.

IT IS ORDERED.

Dated: September 28, 2022

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE